Fabricant, J.
INTRODUCTION
This action arises from a petroleum release at a service station in Spencer, which is alleged to have caused contamination of well water used by occupants of a neighboring home. The Commonwealth initially brought this action against JEMS New England, Inc. (“JEMS”), seeking civil penalties and injunctive relief. JEMS, in turn, joined Zecco, Inc. (“Zecco”), which it alleges caused the contamination and failed to remedy it. Presently before the Court is Zecco’s motion to dismiss JEMS’ third-party complaint against it. The Commonwealth joins in the motion. For reasons that will be explained, the motion will be allowed.
BACKGROUND
The Commonwealth’s complaint against JEMS alleges the following facts. In 1992 and 1993, JEMS, then known as Marañe Oil, notified the Department of Environmental Protection (“DEP”) that a petroleum release had occurred at the site, and that private wells near the site were contaminated. Among the contaminated wells was one that supplied the residence of the Prouty family. Pursuant to DEP regulations, in 1995 JEMS applied for and received a permit to conduct a response action, subject to regulatory requirements. In 1996, JEMS submitted a proposal to remedy the contamination of the Prouty family’s well by connect *66 ing that residence to a public water supply. DEP approved that plan, subject to certain conditions, particularly submittal of an alternate plan if the connection had not occurred by a specified deadline. JEMS did not meet the deadline, and submitted reports that made .false statements regarding the cause of the delay.
In January of 1999, a licensed site professional working for JEMS notified DEP of contamination of the well at the Prouty residence. JEMS then submitted a proposal to address the problem temporarily by providing bottled water for the Prouty family’s use. DEP approved that plan, subject to specified conditions with respect to long term measures. Testing through June of 2000 showed continued contamination. During this period JEMS did not fulfill its commitment to supply bottled water, but submitted reports falsely stating that it had done so.
On June 20, 2000, DEP issued an order directing JEMS to implement a permanent solution by June 26, 2000, either by providing a carbon filter treatment system or by connecting the residence to the public water system. On June 23, 2000, JEMS, through its licensed site professional, reported that on that date it had connected the residence to a public water supply.
Based on these factual allegations, the Commonwealth brought suit against JEMS on November 14, 2001. The complaint sets forth five counts. Counts I and II assert that JEMS violated specified regulatory obligations by its failure to perform the temporary and permanent remedial measures specified by the permit and subsequent approvals, by the specified dates. Counts III and IV assert that JEMS violated specified regulatory obligations by submitting reports containing false statements. As a remedy for each of the violations asserted in these four counts, the complaint seeks civil penalties pursuant to G.L.c. 2 IE, §11.
Countv. of the complaint asserts that, as of the date of the complaint, JEMS had not fulfilled its regulatory obligation to “achieve a Response Action Outcome” and submit a “Response Action Outcome Statement” within five years of receiving its 1995 permit. As a remedy for this violation, Count v. seeks a civil penalty pursuant to G.L.c. 2 IE, §11, along with an injunction ordering JEMS to fulfill these obligations. At argument on the present motion on July 22, 2002, counsel for the Commonwealth acknowledged that JEMS submitted the statement in December of 2001, that DEP is not presently aware of any inaccuracy or other deficiency in that statement, and that for those reasons the Commonwealth now withdraws its request for injunctive relief.
JEMS filed its third-party complaint against Zecco on January 28, 2002. The third-party complaint alleges that JEMS, in its capacity as supplier of petroleum products to the operator of the service station, contracted with Zecco in 1984 to install servicestationequipment.andthatwhileperformingthat contract, Zecco “caused a sudden and accidental release of petroleum products into the surrounding soils and groundwater at the Property.” The release, the complaint alleges, was caused by negligence on the part of Zecco, and was known to Zecco at the time of its occurrence. Zecco failed to remediate the release or to take actions to prevent its migration. As a result, JEMS has incurred and will continue to incur costs of remediation, for which it seeks recovery against Zecco.[1] The third-party complaint sets forth five counts. Count I claims contribution, indemnification, and reimbursement from Zecco for any penalties the Commonwealth may recover against JEMS. Count II seeks response costs that JEMS has incurred, pursuant to G.L.c. 2IE. Counts III and IV allege negligence and breach of contract, for which JEMS seeks unspecified damages. Count v. alleges an actual controversy between the parties “regarding the responsibility and liability for contamination at the Property,” and seeks a declaration that Zecco is liable “for any damages, penalties, expenses and/or costs incurred or that may be incurred by JEMS.”
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b), the Court accepts as true all factual allegations of the complaint, along with reasonable inferences therefrom, Fairney v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[The] complaint should not be dismissedfor failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whittinsville Plaza Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whittinsville, 378 Mass. at 89; see also C.M. v. P.R., 420 Mass. 220, 231 (1995).
Under Mass.R.Civ.P. 14, a defendant may join "a person who is or may be liable to him for all or part of the plaintiffs claim against him.” See Gabiddon v. King, 414 Mass. 685, 686-87 (1993). Zecco contends that JEMS’ third-party complaint does not meet this standard, because it does not state a cognizable claim of liability on the part of Zecco for any part of the claim alleged against it by the Commonwealth. In particular, Zecco contends that count I of the third-party complaint fails to state a claim against it on which relief may be granted in that, as a matter of law, it can have no liability to JEMS for the penalties the Commonwealth seeks to recover from JEMS. Zecco concedes, for purposes of this motion, that counts II through v. *67 of the third-party complaint do state a cognizable claim against it, which JEMS would he entitled to pursue in a separate action, but argues that those counts cannot properly be raised in this action, since they do not seek recovery for any part of the claim raised by the Commonwealth against JEMS, and are not joined with any claim that does. After hearing and review of all materials submitted and authorities cited, the Court agrees.
General Laws c. 231B, §l(a) establishes aright of contribution for tort damages generally, “where two or more persons become jointly liable in tort for the same injury to person or property.” G.L.c. 2IE, §4 establishes a similar right in the specific context of environmental response; that statute grants a right of contribution to “[a]ny person who undertakes a necessary and appropriate response action regarding the release ... of oil or hazardous materials” against “any other person liable for such release . . . for the reasonable costs of such response action.” See Martigenetti v. Haigh-Farr, Inc., 425 Mass. 294, 313 n. 35 (1997). Aside from statutory contribution, Massachusetts recognizes a right of common-law indemnification only under limited circumstances. Those include where the party seeking indemnification incurs liability solely on a .derivative or vicarious basis, without any fault of its own, and, in rare cases, where that party’s fault is slight compared with that of party from whom indemnification is sought. See Economy Engineering Co. v. Commonwealth, 413 Mass. 791, 794 (1992); Rathbun v. Western Massachusetts Electric Co., 395 Mass. 361, 364 (1985); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 40 (1983). To recover either contribution or indemnification, a claimant must show that the other party at least contributed to causing the particular liability in issue.
The parties have devoted considerable attention to the legal question whether liability for civil penalties, imposed upon complaint of a governmental authority pursuant to its statutory or regulatory powers, could ever be subject to shifting by means of contribution or indemnification. In this regard, Zecco and the Commonwealth point to the deterrent purposes of civil penalties, as well as the prosecutorial discretion vested in the governmental authority that seeks their imposition; they suggest that shifting the impact of penalties would undermine statutory and regulatory objectives. In response, JEMS points to language in G.L.c. 2IE, §4A, that it reads as authorizing contribution for penalties,[2] along with dictum in a Superior Court decision, Commonwealth v. Homart Development, 6 Mass. L. Rptr. 517, 1997 Mass Super. LEXIS 443, *10 (Doerfer, J.), that appears to accept that reading.® Based on the allegations set forth in the pleadings, as summarized supra, the Court finds it unnecessary to decide this legal question, because the third-party complaint does not set forth allegations that would support contribution or indemnification for the penalties sought by the Commonwealth here, even if such remedies could apply to penalties under appropriate circumstances.
The crux of JEMS’s claim against Zecco, it appears, is that Zecco caused the release, and so is responsible for all harm arising from it, including costs incurred by JEMS in responding to it. That may be so. But the Commonwealth’s claim against JEMS does not seek response costs, damages, penalties, or anything else arising from the release, nor does it seek penalties for a general failure to remediate the site. Rather, the Commonwealth’s complaint seeks penalties for the particular regulatory violations it alleges that JEMS committed, including failure to comply with specific conditions of the permit and approvals issued to JEMS, filing false reports, and failing to meet a regulatory deadline running from the date of issuance of the permit to it. JEMS does not allege that Zecco participated in any way in these particular regulatory violations, and nothing in the materials presently before the Court suggests that it could so allege. It does not appear that the Zecco was a recipient of the permit or approvals, so as to be subject to any conditions or deadlines under those documents. Nor does it appear that Zecco had any role in the filing.of the reports that allegedly contained false statements. Having had no role in the conduct that is the basis of the Commonwealth’s claim for penalties against JEMS, Zecco can have no obligation to contribute to or indemnify JEMS for any such penalties the Commonwealth may recover from JEMS.
CONCLUSION AND ORDER
For the reasons stated, the Motion to Dismiss Third-Party Complaint is ALLOWED. Dismissal shall be with prejudice as to count I of the third-party complaint, and without prejudice as to all other counts of the third-party complaint.

The complaint indicates that JEMS and Zecco have entered into a tolling agreement.

The cited language authorizes a person who undertakes a response action to assert against any other responsible party a demand “to make contribution or reimbursement or pay its equitable share of the costs of such response action or other liabtltty pursuant to the provisions of this chapter” (emphasis added). JEMS argues that “other liability” must include civil penalties, since such penalties are authorized under c. 21E. The argument is weakened by the provision in c. 21E, §5(e), for various kinds of liability other than response costs and penalties, such as damages to the Commonwealth for “injury to and for destruction or loss of natural resources" and for “damage to [any person's] real or personal property,” as well as multiple damages, litigation costs, and attorneys fees. Thus, a party may be subject to contribution for response costs and “other liability,” without being subject to contribution for penalties.

The dictum relied on is that c. 21E, §4A:
restricts the statutory right to reimbursement to those costs incurred pursuant to Chapter 2 IE. This language *68 would thus encompass expenses such as response costs under 4, damage to real or personal property under 5, Injury to natural resources under 5, and presumably, civil penalties under 811.
(Emphasis added.) The case arose under a different statute which, the Court held, did not authorize contribution for penalties, essentially for the policy reasons argued by Zecco and the Commonwealth here. Read in context, the cited dictum appears to be in the nature of an assumption for purposes of the argument, not a decision to interpret 84A in the manner argued.